1  WO

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8  CARR HUML INVESTORS, LLC          )
   GREER RANCH PARCEL 8/4, LLC,      )     No. CV 05-2233 PHX MEA
9  DSE GROUP, LLC,                   )     No. CV 05-2470 PHX MEA
                                     )     No. CV 06-2636 PHX MEA
10         Plaintiffs,               )         Consolidated
                                     )
11 v.                                )     MEMORANDUM AND ORDER
                                     )
12 STATE OF ARIZONA,                 )
                                     )
13         Defendant,                )
   _____   )
14                                   )
                                     )
15 KEVIN G. NORBY, LLC,              )
                                     )
16         Plaintiff,                )
                                     )
17 v.                                )
                                     )
18 STATE OF ARIZONA,                 )
                                     )
19         Defendant,                )
   _____   )
20                                   )
   PHILLIP B. STONICH, BILL          )
21 SCHWOERER, ROBERT SCHWOERER,      )
   JON SCHWOERER, GALE BARBARA       )
22 HART, CARENA STAMPS, KATHY        )
   HOLDER, SUNLORE HOMES, INC.,      )
23 GMSC DEVELOPMENT GROUP, INC.,     )
   TERRY ABBOTT, G. LEWIS            )
24 ENTERPRISES, INC., DIAMOND        )
   HEAD CONSTRUCTION, L.L.C.,        )
25 MICHAEL J. DANZER, JEAN DANZER,)
   TROY LANGDON, ESTATE OF           )
26 MARY LANGDON, DENISE ABBOTT,      )
   ELIZABETH DANZER, TOM HOLDER,     )
27 JENNIFER LANGDON,                 )
                                     )
28         Plaintiffs,               )
                                     )
                                     )

1  **v.**                                    )
                                            )
2  **ELAINE RICHARDSON, ARIZONA**           )
   **DEPARTMENT OF REAL ESTATE,**           )
3  **STATE OF ARIZONA,**                     )
                                            )
4          **Defendants.**                  )
   _____       )

5

6          All of the parties in each of the above-captioned

7  matters, which have been properly consolidated, have agreed to

8  the exercise of magistrate judge jurisdiction over all of the

9  claims asserted, including the entry of final judgment.  Before

10 the Court are Plaintiffs' motion for summary judgment [Docket

11 No. 32] (captioned as a motion for partial summary judgment),

12 and Defendants' cross-motion for summary judgment [Docket No.

13 47].[1]  Also before the Court is Defendant's Supplemental Motion

14 for Summary Judgment [Docket No. 52], filed simultaneously with

15 a supplemental statement of facts, and Plaintiff's motion

16 [Docket No. 53] to strike Defendant's supplemental motion for

17 summary judgment, which was filed simultaneously with

18 Plaintiffs' supplemental statement of facts [Docket No. 54].

19          **I Procedural History**

20          Plaintiffs in the initial case in this matter filed

21 suit against the State of Arizona in the Maricopa County

22 Superior Court, alleging violation of their constitutional

23 rights and alleging claims based on state law.  That case was

24 removed to the United States District Court for the District of

25

26

27  _____

28      [1] All citations to docket numbers in this Memorandum and Order
   are to docket numbers in 05 CV 2233.

Arizona on July 27, 2005.[2]  The second consolidated suit, filed by Plaintiff Kevin Norby LLC and naming the State of Arizona as the defendant, alleged as causes of action an unconstitutional taking of real property, inverse condemnation, and negligence. That case was removed to federal court on August 16, 2005.  The third consolidated cause of action, alleging the unconstitutional taking of real property, inverse condemnation, negligence, a violation of Plaintiffs' rights to equal protection of the law, and a claim for declaratory relief, was removed to federal court on November 2, 2006.  That suit names as defendants Elaine Richardson, the Arizona Department of Real Estate, and the State of Arizona.

In the consolidated action as stipulated to by the parties, Plaintiffs allege Defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983 because Defendants violated Plaintiffs' federal constitutional rights.  Plaintiffs assert Defendants violated their Fifth Amendment and Fourteenth Amendment rights to be free of the taking of their real property by the government without just compensation (Count I).[3] Plaintiffs allege a cause of action based on inverse condemnation (Count II).  Plaintiffs further assert a claim based on Defendants' alleged negligence in issuing a certificate of administrative completeness with regard to their real

---

[2] The initial case was assigned to the Honorable Morton Sitver, who stayed the matter in an order issued May 12, 2006.  The case was reassigned due to Judge Sitver's retirement.

[3] Plaintiffs assert a violation of the Fifth and Fourteenth Amendments in their complaint and argue in their pleadings that Defendants violated their right to due process of law.

property (Count III).    Plaintiffs also contend Defendants violated their constitutional rights to equal protection of the law (Count IV).    Additionally, Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201 (Count V), and seek an award of monetary damages and attorneys' fees pursuant to 42 U.S.C. § 1988.

No scheduling order was issued in the underlying case. A motion to dismiss was filed, which motion was denied without prejudice and the case stayed on May 12, 2006.   On January 1, 2007, Plaintiffs filed a motion for partial summary judgment and a statement of facts in support of their motion.    Plaintiffs sought oral argument on their motion.   See Docket No. 32.   The parties stipulated to a lifting of the stay of the proceedings on February 6, 2007.

On February 28, 2007, Defendants filed a response to Plaintiffs' motion, and a cross-motion for summary judgment and a controverting statement of facts.    On April 2, 2007, Plaintiffs filed a pleading in support of their motion for partial summary judgment and in response to Defendants' cross-motion, and a controverting statement of facts.   Defendants filed a reply in support of their motion on May 7, 2007.[4]   On October 4, 2007, Defendants filed a Supplemental Motion for

---

[4] On June 4, 2007, after all of the parties in all of the cases agreed to proceed before a Magistrate Judge, and the Court ordered all three of the cases consolidated and granted Plaintiffs leave to amend their complaints in Case Number CV 05-02233 PHX MEA and Number CV 05-2470 PHX MEA to add a cause for relief based on equal protection and to add a claim for declaratory relief.   At that time the Court also stayed further pleading and oral argument regarding the cross-motions for summary judgment pending a settlement conference in this matter. The settlement conference was conducted August 28, 2007, and the parties were not successful in reaching a settlement of the matter.

Summary Judgment and Statement of Facts.  See Docket No. 52. Plaintiffs filed a motion to strike the supplemental motion for summary judgment and filed a supplemental statement of facts. See Docket No. 53 & Docket No. 54.  Defendants filed a pleading in response to the motion to strike and in support of their supplemental motion for summary judgment.  See Docket No. 55.

The Court concludes oral argument regarding the motions for judgment as a matter of law is not necessary to expedient resolution of the motions.

**II Standard for granting judgment as a matter of law**

Rule 56 of the Federal Rules of Civil Procedure provides that judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

The party opposing the motion may not rest upon the mere allegations of their pleadings, but instead must produce significant, probative evidence which contradicts the moving party's allegations, establishing that there is a genuine question of fact for resolution at trial.  Anderson, 477 U.S. at

248, 256-57; 106 S. Ct. at 2510, 2513-14.   The Court must consider a party's motion for summary judgment construing all alleged facts with all reasonable inferences favoring the non-moving party.   See e.g., Genzler v. Longanbach, 410 F.3d 630, 636 (9th Cir.), cert. denied, 126 S. Ct. 749 (2005).   In considering a motion for summary judgment, the Court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material.   Celotex, 477 U.S. at 324, 106 S. Ct. at 2548; Eisenberg v. Insurance Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir. 1987).

### III Statement of facts

The parties do not dispute the material facts of the case.   Although Plaintiffs have moved to strike Defendants' supplemental motion for summary judgment, Plaintiffs do not contest the truth of the facts stated in Defendants' supplemental statement of facts.   See Docket No. 53.

"Greer Ranch" refers to a parcel of real property in Maricopa County north of Phoenix, near New River Road, comprised of approximately 364 acres of unincorporated land.   Greer Ranch was once wholly owned by RTD Holdings, Inc.   RTD Holdings, Inc. is not a party in any of the three cases consolidated in this matter.[5]

---

[5] Greer Ranch, L.L.C., purchased the Greer Ranch property in October of 1997.   The owners intended to subdivide the property, and purchased a well and prepared a preliminary subdivision plat map in 2000.   Docket No. 33 (Plaintiff's Statement of Facts "PSOF"), Exh. 3.   "However, a developer or builder could not be persuaded to take on the project.   Therefore, [] RTD Holdings, Inc., was formed to hold and sell the property as unsubdivided land."   Id., Exh. 3.

On or about January 2, 2002, RTD Holdings, Inc. ("RTD"), submitted a Public Report to the Arizona Department of Real Estate ("ADRE"), regarding Greer Ranch, which was then unsubdivided land.[6] See Docket No. 33 (Plaintiffs' Statement of Facts "PSOF"), Exh. 1 & Exh. 2; Ariz. Rev. Stat. Ann. § 32-2195.03 (2002 & Supp. 2006). On January 10, 2002, the ADRE issued an Unsubdivided Lands Public Report ("Public Report") to RTD, establishing that the Public Report submitted by RTD was administratively complete. PSOF, Exh. 1. The issuance of a Public Report is a prerequisite to the selling of unsubdivided land within the state of Arizona. The ADRE's certification that the Public Report was administratively complete conferred upon RTD a license to begin selling parcels of Greer Ranch property. See Ariz. Rev. Stat. Ann. §§ 32-2101(28) & 32-2195.03(D) (2002 & Supp. 2006).[7]

_____

[6] "Unsubdivided lands" means land or lands divided or proposed to be divided for the purpose of sale or lease, ... into six or more lots, parcels or fractional interests and the lots or parcels are thirty-six acres or more each ..., or that are offered, known or advertised under a common promotional plan for sale or lease...
Ariz. Rev. Stat. Ann. § 32-2101(59) (2002 & Supp. 2006).

[7] Section 32-2195.03 provides, inter alia:
Upon examination of unsubdivided land, the commissioner, unless there are grounds for denial, shall prepare and issue to the owner or agent a public report authorizing the sale or lease of the unsubdivided lands in this state. ... .... The commissioner shall require the owner or agent to reproduce the report and furnish each prospective buyer with a copy before the buyer signs an offer to purchase...
B. Notwithstanding any provision of subsection A of this section, an owner may prepare a final public report for use in the sale of unsubdivided lands ...
***
4. The department shall determine within fifteen business days after the receipt of the notification and public report whether the notification and public report are

-7-

1          The Public Report, which RTD was required by state law

2  to provide to each purchaser of Greer Ranch land, contains the

3  following:

4                              DISCLAIMER

5          This report is NOT A RECOMMENDATION NOR AN
           ENDORSEMENT by the State of Arizona of this
6          land. The department has not subjected the
           application and public report to a detailed
7          examination. The developer prepared the
           report and the Department has verified none
8          of the information in this report; the
           Department has accepted all information as
9          true and accurate based on attestation of the
           developer and/or the developer's agents. *The
10         purchaser should verify all facts before
           signing any documents. The Department assumes
11         no responsibility for the quality or quantity
           of any improvement in this development.*

12

13  PSOF, Exh. 1 (emphasis added).

14

15  _____

    administratively complete. ...
16  5. An owner may commence sales or leasing activities as
    permitted under this article after obtaining a certificate
17  of administrative completeness from the commissioner.
    6. Before or after the commissioner issues a certificate of
18  administrative completeness, the department may examine any
    public report, development or applicant that has applied
19  for or received the certificate. If the commissioner
    determines that the owner or development is not in
20  compliance with any requirement of state law or that
    grounds exist under this chapter to suspend, deny or revoke
21  a public report, the commissioner may commence an
    administrative action ...
22  ***
    D. No owner or agent may sell or lease or offer for sale or
23  lease unsubdivided lands without first obtaining a public
    report from the commissioner....
24  ***
    F. ... when the commissioner ... has satisfactory evidence
25  that the owner or agent is violating any provision set
    forth in this article or the rules of the commissioner or
26  has engaged in any unlawful practice ... with respect to
    the sale of unsubdivided lands or deviated from the
27  provisions of the public report, the commissioner may
    investigate the subdivision project and examine the books
28  and records of the owner or agent. ...
    (emphasis added).

                                   -8-

1    Subsequent to January of 2002, RTD sold parcels 5

2 through 9 of the Greer Ranch property to Plaintiffs.[8]  Plaintiffs

3 were presumably provided with the Public Report when they

4 purchased their properties from RTD, as required by state law.

5 After the issuance of the Public Report and prior to January 28,

6 2004, some Plaintiffs expended money in the furtherance of

7 developing their property for residential use.  See Docket No.

8 41 (Plaintiffs' Reply) at 2.

9    On January 28, 2004, Defendant ADRE issued a summary

10 suspension of the Public Report.  PSOF, Exh. 2.  Defendant ADRE

11 had determined that RTD had created an illegal subdivision by

12 selling other than unsubdivided land.  Id., Exh. 2.  Defendant

13 ADRE determined RTD's January 2002 report contained inaccurate

14 statements and representations and that RTD had not complied

15 with state subdivision laws and regulations.[9]  Id., Exh. 2.

16 Accordingly, Defendant ADRE suspended RTD's license to sell land

17 within Greer Ranch, i.e., the Public Report, by means of a

18 "Summary Suspension Order."  Id., Exh. 2.

19

20

21    [8] If any Plaintiff acted in concert with RTD or another property

22 owner to split their Greer Ranch property into six or more parcels and
sell portions of the property without compliance with Arizona's

23 subdivision statutes and regulations, they would have violated Arizona
Revised Statutes Annotated § 32-2181(D).  See Siler v. Arizona Dep't

24 of Real Estate, 193 Ariz. 374, 379, 972 P.2d 1010, 1015 (Ct. App.
1999) (applying state law in effect at that time providing that

25 Arizona's subdivision laws were triggered by the division of land into
four or more lots and concluding violation of the statute did not

26 require a finding of specific intent).

27    [9] Specifically, the order notes that there were seven lots of

28 less than 36 acres each, that multiple parcels of land were identified
as parcel 3, parcel 8, and parcel 9, and that the parcels were not
contiguous.  PSOF, Exh. 2.

Defendant ADRE notified RTD of the Summary Suspension Order because RTD had prepared the Public Report which was invalidated by the Summary Suspension Order. Docket No. 38 (Defendants' Statement of Facts "DSOF") at para. 2. The Summary Suspension Order was recorded in the Maricopa County Recorder's Office on February 11, 2004. PSOF, Exh. 2. The Summary Suspension Order was directed to RTD, "Greer Ranch," and David Reesor and Edward Grant, the principals of RTD and the signatories to the Public Report. Id., Exhs. 1 & 2. The order provided: "The terms of this Order apply only to the interest of the Respondents named herein and do not apply to any other entity." Id., Exh. 2. The order, however, concluded that the Public Report, which covered all of the Greer Ranch property, was incorrect and that the Greer Ranch property was a subdivision. Id., Exh. 2. Plaintiffs were not given actual notice of the Summary Suspension Order.

RTD appealed the Summary Suspension Order and hearings were held by the Office of Administrative Hearings. Id., Exh. 3. An Administrative Law Judge ("ALJ") issued a decision regarding the appeal on June 14, 2004. Id., Exh. 3. The ALJ concluded that Greer Ranch met the definition of a "subdivision" and not that of unsubdivided lands and, accordingly, affirmed the Summary Suspension Order. Id., Exh. 3.

On July 14, 2004, Defendant Richardson, the Commissioner of the ADRE, issued a Final Order ("Final Order"). The Final Order was recorded in the Maricopa County Recorder's Office on August 4, 2004, as Instrument No. 2004-0904954. Id., Exh. 4. The Final Order adopted the ALJ's conclusion that Greer

Ranch was a subdivision and was not unsubdivided lands.  Id.,
Exh. 4.  The Final Order vacated the Summary Suspension Order,
but also revoked the January 2002 Public Report, i.e., RTD's
license to sell Greer Ranch land.  Id., Exh. 4.

Eleven Plaintiffs purchased Greer Ranch property after
February 11, 2004, the date the Summary Suspension Order was
recorded. See Docket No. 52.[10]  Five of these eleven Plaintiffs
purchased their property after the date the Final Order was
recorded, i.e., August 4, 2004.  Id. at 3.  Plaintiff Kevin
Norby LLC completed its purchase of several parcels of Greer
Ranch property from RTD after February 11, 2004.  Docket No. 37
at 4 n.4.  Kevin Norby asserts he relied on the assurance of
ADRE that this property was not affected by the Summary
Suspension Order.  Docket No. 41, Exh. 15.[11]

---

[10]  The evidence presented by Defendants at Docket No. 52
indicates the following Plaintiffs recorded deeds for Greer Ranch
property after February 11, 2004: Bill Schwoerer, Sunlore Homes, Gale
Barbara Hart, Robert Schwoerer, Jon Schwoerer, Carena Stamps, G. Lewis
Enterprises, Diamond Head Construction, Troy and Jennifer Langdon,
Kevin Norby, Terry and Denise Abbott.  Plaintiffs Bill Schwoerer,
Carena Stamps, G. Lewis Enterprises, Diamond Head Construction, Troy
and Jennifer Langdon, purchased Greer Ranch property after the date
the Final Order was recorded.

[11]  There is no explicit claim of estoppel in Plaintiffs'
pleadings.  However, Plaintiffs offer statements of fact with regard
to their alleged reasonable reliance on the Public Report and, in the
case of Plaintiff Norby, the representations of Defendant ADRE, when
acting to their supposed detriment by purchasing their properties.
Any claim of estoppel against a state government agency would be
precluded because Plaintiffs have not alleged nor provided evidence
of any affirmative misrepresentation beyond mere negligence on the
part of any Defendant which would not result in harm to the public
interest if corrected. See, e.g., Morgan v. Gonzales, 495 F.3d 1084,
1092 (9th Cir. 2007); Sulit v. Schiltgen, 213 F.3d 449, 454 (9th Cir.
2000)("Neither the failure to inform an individual of his or her legal
rights nor the negligent provision of misinformation constitute
affirmative misconduct. ... In any event, estoppel against the
government is unavailable where petitioners have not lost any rights
to which they were entitled."); Watkins v. United States Army, 875

The Final Order states that "on or about May 5, 2002 through September 2, 2002, Appellants RTD sold parcels 5 through 9 at Greer Ranch ..." PSOF, Exh. 4. The Final Order further states: "The sales conducted by Appellants RTD were in violation of subdivision laws...." <u>Id.</u>, Exh. 4. Additionally, the Final Order states: "The sales of parcels 5 through 9 without a Subdivision Public Report may be rescindable by purchasers pursuant to A.R.S. § 32-2183(F)." <u>Id.</u>, Exh. 4. Plaintiffs were not given actual notice of the Final Order.

The Commissioner, Defendant Richardson, sent her Final Order to the Maricopa County Regional Development Services Department ("MCRDSD"). <u>Id.</u>, Exh. 13. The MCRDSD responded by letter to Defendant Richardson on August 4, 2004. <u>Id.</u>, Exh. 13. The letter notes the Commissioner's finding that Greer Ranch comprised a subdivision. <u>Id.</u>, Exh. 13. The letter stated that no subdivision plat had been approved for Greer Ranch. <u>Id.</u>, Exh. 13.

The letter further states:

> In accordance with the Zoning Ordinance for Unincorporated Maricopa County, "...The Zoning Inspector shall withhold the issuance of any and all permits when it appears that the proposed erection, construction, reconstruction, alteration, maintenance or use does not fully conform to any Ordinance, regulation, or provision enacted or adopted by the Board of Supervisors... As a result, beginning immediately, <u>we are suspending the issuance of building permits for all property within Greer Ranch until this matter has been resolved.</u>

F.2d 699, 707 (9th Cir. 1989) ("estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.").

Id., Exh. 13 (emphasis in original).  See also Exh. 9 (Cease and Desist Order noting building permits could not be issued for land in violation of the state's subdivision statutes).

In July of 2004 RTD timely appealed the Final Order to the Maricopa County Superior Court.  PSOF, Exh. 5.  Plaintiffs were not given notice of and were not parties to that Superior Court action.  On June 6, 2005, the Maricopa County Superior Court entered a judgment affirming the Final Order.  Id., Exh. 7.[12]

On June 21, 2005, Defendant ADRE issued a Cease and Desist Order regarding the right of property owners to sell Greer Ranch land.  Id., Exh. 9.  The Cease and Desist Order was issued to Plaintiffs and other owners of Greer Ranch parcels. See id., Exh. 9.  The facts stated in the Cease and Desist Order indicate that some Plaintiffs acted in contravention of Arizona's subdivision laws, i.e., that these Plaintiffs split their property into six parcels and sold the parcels without compliance with state statutes regarding the sale of subdivided land.  Id., Exh. 9.  The Cease and Desist Order notified the named respondents that they were prohibited from offering their property for sale "without first complying with applicable laws and rules."  Id., Exh. 9.  The Cease and Desist Order also requires the respondents to provide notice to persons to whom

---

[12] RTD appealed the Superior Court's judgment to the Arizona Court of Appeals.  PSOF, Exh. 5.  RTD dismissed its appeal and entered into a Consent Order with ADRE on or about May 11, 2006.  Id., Exh. 8. The Consent Order "exempted" some Greer Ranch parcels, i.e., the parcels previously owned by RTD, parcels numbers 1-4, from the requirements of Arizona Revised Statutes §§ 32-2181 to 32-2185.  Id., Exh. 8.

they had sold Greer Ranch land to notify those persons that the sales were voidable.  _Id._, Exh. 9.

Plaintiffs appealed the Cease and Desist Order and requested a hearing.  _Id._, Exh. 10.  Prior to the hearing, ADRE issued a series of releases whereby some Plaintiffs were released from the Cease and Desist Order.  _Id._, Exh. 12.[13]  The unilateral releases stated:

> The parcels remain part of Greer Ranch, which is a subdivision pursuant to A.R.S. § 32-2181, et seq. and the Commissioner's Final Order in RTD Holdings, Inc. [], as recorded August 4, 2004 in the records of Maricopa County Recorder at Recording No. 04-094954.

_Id._, Exh. 12.  Because the unilateral releases state that Plaintiffs' property is in an illegal subdivision, Maricopa County cannot lift the moratorium on the issuance of building permits for Plaintiffs' property.  _Id._, Exh. 15.

On or about November 4, 2005, after the first suit consolidated in this action was filed in the Arizona Superior Court, Plaintiffs' counsel received a letter from the Maricopa County Attorney.  _Id._, Exh. 14.  The letter stated that some individuals had been released from the Cease and Desist Order, and were "now allowed to transfer [] the subject property." _Id._, Exh. 14.

---

[13] The individuals exempted from the Cease and Desist Order as of October 28, 2005, included Plaintiff Carr Huml Investors, DSE Group, Bill Schwoerer, Kevin G. Norby LLC, Gale Hart, Phillip Stonich, Michael Danzer, Sunlore Homes, Terry Abbott, Tom Holder, Mary Langdon, and Troy Langdon.  _See_ PSOF, Exh. 12.

**IV Analysis**

**Arguments**

As amended, the complaint(s) state claims for relief based on the Fifth Amendment "takings" doctrine and the right to due process of law, and an equal protection claim, pursuant to 42 U.S.C. § 1983.   Plaintiffs contend their right to equal protection was violated by Defendants because Plaintiffs were treated differently from others who bought Greer Ranch property from RTD.   Plaintiffs seek a declaratory judgment that all orders prohibiting them from developing their property are void *ab initio* because they were deprived of due process in the issuance of the orders, which divested Defendants of jurisdiction over Plaintiffs' real property rights.   The amended complaint(s) also assert causes of action predicated on state law theories of inverse condemnation and negligence.

Plaintiffs assert "the commissioner's final order is void for lack of jurisdiction." Docket No. 32 at 5.  Plaintiffs further contend Defendants violated their right to due process of law because, they allege, Defendants failed to give Plaintiffs notice of an action which would affect their vested property rights, i.e., issuance of the Summary Suspension Order.[14]  Plaintiffs argue Defendants' failure to give Plaintiffs notice of the action "reclassifying" Plaintiffs' property "from Unsubdivided to subdivided lands in proceedings to which

---

[14] Plaintiffs assert "[s]ome Greer Ranch property owners actually obtained permits and built their homes before the Summary Suspension Order was issued.  Plaintiffs' rights were vested at the time they purchased the property." Docket No. 40 at 9 n.2, citing Folsom Inv., Inc. v. City of Scottsdale, 620 F. Supp. 1372 (D. Ariz. 1985).

Plaintiffs were given no notice is of no effect." Id. at 8.
Plaintiffs seek an order declaring "that the Final Order and the
Superior Court judgment upholding the Final Order are void,
[and] that ADRE violated Plaintiffs due process rights under
both the United States Constitution and under the Arizona
Constitution and ordering that the Public Report be reinstated
as to Plaintiffs' land." Id.[15]

Defendants argue the State of Arizona must be dismissed
as a party to this matter because it is not a "person" who may
be sued pursuant to section 1983. Defendants assert they are
entitled to judgment as a matter of law in their favor because
Plaintiffs' due process claim is not ripe for adjudication.
Defendants argue this claim is not ripe because a state statute
gives Maricopa County sole discretion to issue building permits.
See Docket No. 37 at 5. Defendants also contend Plaintiffs do
not have standing to raise their due process claims. Id.
Defendants further assert the Summary Suspension Order issued
January 28, 2004, and recorded February 11, 2004, was not a
"taking" of Plaintiffs' property in violation of the Fifth
Amendment.

A basic legal dispute between the parties is whether,
as a matter of law, the disclaimer in the Public Report, or the
recording of the Summary Suspension Order, or the recording of
the Final Order, constituted actual or constructive notice to

---

[15] Plaintiffs only, apparently, seek judgment as a matter of law
with regard to their claim that Defendants violated their right to due
process. Plaintiffs assert in their response to Defendants' motions
that there are material issues of fact in dispute with regard to
Plaintiffs' Fifth Amendment "takings" claims.

these Plaintiffs that their purchase of Greer Ranch property involved restrictions on the use or development of the property due to RTD's failure to comply with Arizona's subdivision laws.

In their supplemental motion for summary judgment, Defendants declare:

> Defendants [] move for summary judgment against Plaintiffs Norby, Schwoerer, Hart, Stamps, Homes, Langdon, G. Lewis Enterprise, Diamond Head Construction and Terry and Denise Abbott. These eleven named Plaintiffs recorded deeds for their parcels after February 11, 2004, the date when ADRE recorded the Summary Suspension of the Public Report. Accordingly, these eleven Plaintiffs had notice, prior to their acquisition of property in Greer Ranch, that Greer Ranch was an illegal subdivision, which bars all of their claims in this lawsuit.

In their motion for summary judgment, response to Defendants' motion for summary judgment, and their motion to strike Defendants' supplemental motion for summary judgment, Plaintiffs assert that, as a matter of law, Plaintiffs did not have actual or constructive notice of the Summary Suspension Order or the Final Order:

> Defendants' "Supplemental" Motion does not explain how the Summary Suspension Order gave notice of anything when it specifically stated that it did not apply to Plaintiff. Since it did not apply to Plaintiff not even the title companies who were insuring title to Plaintiffs' property listed the Summary Suspension Order on the title commitments. []. Thus, even those Plaintiffs who came into title after the recording of the Summary Suspension had no notice, constructive or otherwise, because the Summary Suspension Order did not apply to them.
> Even if the Summary Suspension Order had been directed to Plaintiffs, the mere recording of the Summary Suspension Order was insufficient to put Plaintiffs on notice. As Plaintiffs argued [,] ADRE was required to give Plaintiffs actual notice and an

> opportunity to be heard. The recording of a Summary Suspension Order gave no actual notice. When notice is required to be given in a particular manner, any means other than that prescribed is ineffective. "This is so even though the intended recipient of the notice does in fact acquire the knowledge contemplated by the law." *Hart v. Bayless Investment and Trading, Co.*, 86 Ariz. 379 at 388, 346 P.2d 1101 at 1108 (1960).

Docket No. 53 at 3-4.

**Plaintiffs' motion to strike**

Granting or denying the motion to strike is a matter committed to the Court's discretion. <u>See</u> <u>Herring v. Delta Air Lines, Inc.</u>, 894 F.2d 1020, 1021 (9th Cir. 1990); <u>Castello v. Martin</u>, 197 Fed. App. 14, 17 (1st Cir. 2006). A motion to strike is properly denied if that decision does not result in prejudice to the moving party. <u>See</u>, <u>e.g.</u>, <u>Ramsdell v. Bowles</u>, 64 F.3d 5, 8 (1st Cir. 1995); <u>Voice Capture, Inc. v. Intel Corp.</u>, 354 F. Supp. 2d 997, 1008 (S.D. Iowa 2004).

Defendants' supplemental motion for summary judgment seeks judgment as a matter of law with regard to all of the claims alleged by Plaintiffs Norby, Schwoerer, Hart, Stamps, Homes, Langdon, G. Lewis Enterprise, Diamond Head Construction and Terry and Denise Abbott. Defendants assert that, because these eleven Plaintiffs recorded deeds for their parcels of Greer Ranch property after February 11, 2004, the date on which ADRE recorded the Summary Suspension of the Public Report, these Plaintiffs' claims are barred because they had notice, prior to their acquisition of property in Greer Ranch, that Greer Ranch was an illegal subdivision.

-18-

Plaintiffs argue the supplemental motion for summary judgment is barred, inter alia, because it is not authorized by Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona.  Because Plaintiffs do not contest the facts asserted, but only the legal argument raised by Defendants, and because the Court's decision predicated on the facts and argument presented in the supplemental pleadings is cumulative to the denial of relief to all Plaintiffs, the Court will deny the motion to strike.  See Pickens v. Collection Servs. of Athens, Inc., 165 F. Supp. 2d 1376, 1379 (M.D. Ga. 2001).

### Persons who may be sued pursuant to section 1983

To state a section 1983 claim, the plaintiff must allege facts establishing that a "person," acting under color of state law, deprived the plaintiff of a right, privilege, or immunity secured by the United States Constitution.  See, e.g., Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).  The State of Arizona is not a "person" who may be sued pursuant to section 1983 and, therefore, the State of Arizona must be dismissed as a defendant and any section 1983 claim alleged solely against the State of Arizona must be dismissed.[16]

---

[16] The State of Arizona waived sovereign immunity from suit regarding Plaintiff's state-law based claims by removing the matter to federal court.  See Lapides v. Board of Regents, 535 U.S. 613, 617, 122 S. Ct. 1640, 1643 (2002); Bank of Lake Tahoe v. Bank of Am., 318 F.3d 914, 917 (9th Cir. 2003).  However, the designation of a proper section 1983 defendant is statutory and does not arise from the Eleventh Amendment, accordingly, the state could not waive jurisdiction over Plaintiffs' federal constitutional claims.  See, e.g., Gean v. Hattaway, 330 F.3d 758, 766 (6th Cir. 2003).

State officials acting in their official capacities are not "persons" who may be sued for monetary damages pursuant to section 1983. See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 68-69, 109 S. Ct. 2304, 2312 (1989); Sable Commc'ns v. Pacific Tel. & Tel., 890 F.2d 184, 191 (9th Cir. 1989). Accordingly, Defendant Richardson, sued in her official capacity, may not be sued for monetary damages pursuant to section 1983. Additionally, state agencies, such as the Arizona Department of Real Estate, which act as an arm of the state, are not "persons" who may be sued for monetary damages pursuant to section 1983. See Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004); Hartman v. Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1234 (10th Cir. 2003).

Plaintiffs have not named a defendant who may be sued for monetary damages pursuant to section 1983. Defendant Richardson and Defendant ADRE are entitled to judgment as a matter of law with regard to Plaintiffs' section 1983 claims against them for monetary damages, and the State of Arizona is entitled to judgment as a matter of law with regard to Plaintiffs' section 1983 claims. Accordingly, even if Plaintiffs were entitled to relief on their section 1983 claims, the only relief Plaintiffs would be entitled to from the named Defendants would be declaratory relief against Defendant Richardson and Defendant ADRE.

**Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment prohibits the discriminatory application of the law. In order to determine whether a regulatory classification violates the

Equal Protection Clause, the Court must first consider whether the classification is based on a suspect class or implicates fundamental rights.  See Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S. Ct. 2326, 2331-32 (1992); Patel v. Penman, 103 F.3d 868, 875 (9th Cir. 1996).  If the classification is based on a suspect class or implicates fundamental rights, the classification is evaluated under a heightened standard.  Nordlinger, 505 U.S. at 10, 112 S. Ct. at 2331-32.  If the classification is not based on a suspect class and does not implicate fundamental rights, it is evaluated under the "rational basis" standard, i.e., the plaintiffs prevail only if they establish the challenged decision or classification is not rationally related to a legitimate state interest.  Patel, 103 F.3d at 875.

Purchasers of undeveloped land are not a suspect classification and there is no fundamental right to build on, sell, or subdivide real property absent compliance with government restrictions.  Cf. Hager v. City of West Peoria, 84 F.3d 865, 872 (7th Cir. 1996) ("Access to real property does not rise to the level of a fundamental right such that its denial merits heightened scrutiny.").  Plaintiffs' purchase of real property did not confer a protectable federal constitutional right to freeze the "existing" zoning or to use the property as they believed the law allowed at the time of purchase.  Cf. Lakeview Dev. Corp. v. City of S. Lake Tahoe, 915 F.2d 1290, 1295 (9th Cir. 1990) (stating in the context of a due process claim that: "There is, of course, no federal Constitutional right to be free from changes in the land use laws.").  Therefore, rational basis review applies to Plaintiffs' equal

protection claims.

Under rational basis review, the Equal Protection Clause is satisfied if: (1) there is a plausible policy reason for the challenged classification; (2) the facts on which the classification is based could rationally have been considered to be true by the governmental decisionmaker; and (3) the relationship of the classification to the legitimate goal is not so attenuated as to render the distinction arbitrary or irrational. See Nordlinger, 505 U.S. at 11, 112 S. Ct. at 2332, quoted in Tutor-Saliba Corp. v. City of Hailey, 452 F.3d 1055, 1061-62 (9th Cir. 2006).

To succeed on their equal protection claim, Plaintiffs would have to present evidence sufficient for a jury to find not only that the ADRE's treatment of their property rights was different from its treatment of other property owners, but also that the ADRE's actions were irrational and wholly arbitrary. See Gamble v. City of Escondido, 104 F.3d 300, 307 (9th Cir. 1997) ("Rational basis scrutiny also is appropriate for [the plaintiff's] due process claim"), citing Munoz v. Sullivan, 930 F.2d 1400, 1404 n.10 (9th Cir. 1991). "[T]he rational basis test is identical under the two rubrics [of equal protection and due process]...."); Lockary v. Kayfetz, 917 F.2d 1150, 1155-56 (9th Cir. 1990) ("Scrutiny under equal protection analysis is essentially equivalent to scrutiny under due process doctrine ... the rational relation test will not sustain conduct by state officials that is malicious, irrational or plainly arbitrary").

Arizona's subdivision laws are intended to protect the public health, safety, and welfare, by ensuring residents are

afforded adequate streets, utilities, drainage, and other public services.  See, e.g., Siler v. Arizona Dep't of Real Estate, 193 Ariz. 374, 378, 972 P.2d 1010, 1014 (Ct. App. 1999); Alaface v. National Inv. Co., 181 Ariz. 586,  596-97, 892 P.2d 1375, 1385-86 (Ct. App. 1994).  Because of widespread problems with "wildcat" subdivisions in the state of Arizona, state statutes afford the Commissioner of the Department of Real Estate the discretion to act against illegal subdivisions retroactively, i.e., to order property owners to do what they "would have had to do if, at the outset, the group had sought permission and legally subdivided the area." Siler, 193 Ariz. at 379, 892 P.2d at 1015.

Arizona Revised Statutes § 32-2195.03(B)(6) authorizes the ADRE to suspend a public report at any time, even years after the issuance of the public report, if there is noncompliance with state subdivision laws by the property owner who submitted the report:

> Before *or* after the commissioner issues a certificate of administrative completeness, the department may examine any public report, development or applicant that has applied for or received the certificate. If the commissioner determines that the owner or development is not in compliance with any requirement of state law or that grounds exist under this chapter to suspend, deny or revoke a public report, the commissioner may commence an administrative action....

Plaintiffs have not presented any evidence of any "improper or unlawful" handling of their building permits or applications.  See Valley Outdoor, Inc. v. City of Riverside, 446 F.3d 948, 955 (9th Cir. 2006).  Plaintiffs have not presented evidence that ADRE's application of Arizona's

subdivision laws to their property was improper or unlawful. Id. Plaintiffs have not established that Defendant Richardson or Defendant ADRE violated their rights to equal protection by arbitrarily, maliciously, or dishonestly classifying the legal status of their real property, when to allow further development of the subject property absent further process would violate state statutes. Compare Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000) (holding that even a "class of one" may assert an equal protection claim under such circumstances); Lockary, 917 F.2d at 1155-56; Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995) (holding that the government may not engage in "a spiteful effort to 'get' [an individual] for reasons wholly unrelated to any legitimate state objective").

Plaintiffs do not present evidence establishing that any action or non-action by Defendant ADRE or Defendant Richardson was predicated on "... its adverse effects upon [the] identifiable group." Wayte v. United States, 470 U.S. 598, 610, 105 S. Ct. 1524, 1532 (1985). Plaintiffs present no evidence the Final Order or Summary Suspension Order were intended to discriminate against them as a discrete class. See Village of Willowbrook, 528 U.S. at 564, 120 S. Ct. at 1074-75 (recognizing an equal protection violation where a municipal ordinance was targeted at a single individual because the governmental action was arbitrary and irrational).[17]

---

[17] In Village of Willowbrook v. Olech, 528 U.S. 562, 565, 120 S. Ct. 1073, 1075 (2000), the Supreme Court affirmed the Court of Appeals' decision reinstating a complaint wherein the plaintiff alleged the municipality's requirement of an easement twice as large

Defendants have established there is a plausible policy reason for the challenged classification and Plaintiffs do not assert the facts on which the challenged classifications are based could not rationally have been considered to be true by Defendants.   The relationship of the classification to the legitimate goal is not so attenuated as to render the distinction arbitrary or irrational.   Defendants have provided sufficient evidence of distinguishing characteristics of Plaintiffs' situation, i.e., that Plaintiffs were not the original subdivider of the property, that Plaintiffs had not submitted the revocable Public Report, that Plaintiffs were not parties to the judicial proceedings regarding the Public Report resulting in the Consent Order, to survive rational-basis review of Defendants' decisions regarding the challenged classification of Plaintiffs' property rights.   See Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 971 (9th Cir. 2003) ("Under rational-basis review, where a group possesses distinguishing characteristics relevant to interests the State has the authority to implement, a State's decision to act on the basis of those differences does not give rise to a constitutional violation."), quoted in Equity Lifestyle Prop., Inc. v. County of San Luis Obispo, 505 F.3d 860, 871-72 (9th Cir. 2007).

Because, taking the facts in the light most beneficial to Plaintiffs, their constitutional rights to equal protection

---

as other property owners was wholly arbitrary.  The Supreme Court did not reach the issue of whether the plaintiff was required to allege the municipality's subjective malicious motivation to state a claim for relief.

1  of the law were not violated by any action of Defendants,
2  Defendants are entitled to judgment as a matter of law with
3  regard to Plaintiffs' equal protection claim.

**Substantive due process**

5  The Due Process Clause of the Fourteenth Amendment
6  prohibits the deprivation "of life, liberty, or property,
7  without due process of law." U.S. Const., amend. XIV, § 1.
8  Plaintiffs allege they were deprived of their real property
9  without due process of law, arguing they were not provided
10  notice of the Summary Suspension Order and were not parties to
11  the state court litigation resulting in the Consent Order.
12  Plaintiffs also assert a regulatory "takings" claim.

13  Plaintiffs may not, arguably, proceed on a claim
14  predicated on their right to substantive due process when the
15  claim is properly a Fifth Amendment takings claim.  Pursuant to
16  federal law, the same government activity may not provide a
17  basis for both a substantive due process claim, i.e., a claim
18  that the plaintiffs were deprived of their Fourteenth Amendment
19  right to not be deprived of property without due process of law,
20  and a regulatory takings claim, i.e., that the government "took"
21  their property for a public purpose by means of a regulation
22  without just compensation.   See Madison v. Graham, 316 F.3d
23  867, 869-70 (9th Cir. 2002) (comparing the "private" takings
24  rule of Armendariz to a public takings claim); Buckles v. King
25  County, 191 F.3d 1127, 1137 (9th Cir. 1999)("a plaintiff is
26  precluded from asserting a substantive due process claim instead
27  of, or in addition to, a takings claim"); Macri v. King County,
28  126 F.3d 1125, 1128-29 (9th Cir. 1997); Armendariz, 75 F.3d at

-26-

1324.[18]  Because the Takings Clause "provides an explicit textual

source of constitutional protection" against the challenged

action, the Fifth Amendment and "not the more generalized notion

of 'substantive due process,' must be the guide" in reviewing

Plaintiffs' claims.  Graham v. Connor, 490 U.S. 386, 395, 109 S.

Ct. 1865, 1871 (1989).  See also Equity Lifestyle Properties,

Inc., 505 F.3d at 870 n.16; Rumber v. District of Columbia, 487

F.3d 941, 944 (D.C. Cir. 2007).[19]

---

[18] The holding in Armendariz "has been undermined to the limited
extent that a [substantive due process] claim for wholly illegitimate
land use regulation is not foreclosed." Crown Point Dev., Inc. v.
City of Sun Valley, ___ F.3d ___, 2007 WL 3197049, at *1 (9th Cir.).
In Crown Point, the Ninth Circuit concluded a developer could proceed
on a substantive due process claim based on a municipality's allegedly
arbitrary and irrational denial of a permit application because it was
possible the plaintiff could establish the municipality's action did
not substantially advance legitimate interests.  Plaintiffs in this
matter do not assert that Defendants' actions in enforcing Arizona's
subdivision statutes did not substantially advance a legitimate state
interest, removing this matter from the rubric of the holding in Crown
Point.  See also Action Apartment Ass'n, Inc. v. Santa Monica Rent
Control Bd., ___ F.3d ___, 2007 WL 4225774, at *4 (9th Cir.) (noting
Crown Point concluded that "the Fifth Amendment does not invariably
preempt a claim that land use action lacks any substantial relation
to the public health, safety, or general welfare").  Additionally, the
Court's conclusion in the instant matter is not affected by these
recent holdings because, as discussed infra, Plaintiffs do not have
a constitutionally-protectible property right to develop their
property in contravention of Arizona's subdivision laws, a necessary
element of a substantive due process claim.

[19] Compare Dodd v. Hood River County, 59 F.3d 852, 864 (9th Cir.
1995), wherein the Ninth Circuit Court of Appeals analyzed the
plaintiffs' claim predicated on the defendant's change in the zoning
of their property:
    To establish a violation of their right to substantive due
    process, the [plaintiffs] must prove that the County's
    actions were "clearly arbitrary and unreasonable, having no
    substantial relation to the public health, safety, morals,
    or general welfare." [] A substantive due process claim
    requires proof that the interference with property rights was
    irrational and arbitrary. []. Federal judicial
    interference with a local government zoning decision is
    proper only where the government body could have no
    legitimate reason for its decision. [] There is no denial
    of substantive due process if the question as to whether

> The [] claim of "taking of property without due process" potentially fits well within this theory. The [] case has never been about compensation but rather has concerned "invalidation of the regulation" imposed by the City... Yet, the Supreme Court has left undecided three times the issue of whether the Constitution supports such a theory. [] *And Supreme Court authority subsequent to Williamson County strongly stresses that substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff.* ...

Warren v. City of Athens, 411 F.3d 697, 706-07 (6th Cir. 2005) (emphasis added) (allowing, however, that "a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest.").

Even if Plaintiffs did not assert Fifth Amendment claims, any independent substantive due process claim must fail on the merits.  To establish a substantive due process violation, the plaintiffs must produce evidence there was an abuse of governmental power depriving the plaintiffs of a protected property interest which "shocks the conscience." See, e.g., United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 401 (3rd Cir. 2003) (holding that in the land-use context, substantive due process is violated only when government action "shocks the conscience").  Assuming, arguendo, that Plaintiffs had a protectible property right, Plaintiffs do not assert the deprivation of that interest

---

the government acted arbitrarily or capriciously is "at least debatable." Clover Leaf Creamery Co., 449 U.S. at 469, 101 S. Ct. at 724.

resulted from an abuse of governmental power of sufficient degree to be deemed a constitutional violation.  See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1577 (11th Cir. 1989).

The federal courts have consistently concluded that a landowner's substantive due process and equal protection rights are not violated even when a municipality acts in violation of state or local law, in bad faith, or beyond its jurisdiction. See Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1991); PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991); Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 467 (7th Cir. 1988) ("Something more is necessary than dissatisfaction with the rejection of a site plan to turn a zoning case into a federal case; and it should go without saying that the something more cannot be merely a violation of state (or local) law.").

**Procedural due process**

Plaintiffs contend they were deprived of their right to notice and an opportunity to be heard prior to the governmental decisions issued with regard to Greer Ranch and the prohibition of the development thereof, because they were not given notice of the Summary Suspension Order or the Consent Order. Plaintiffs' procedural due process claim is also one that is, arguably, subsumed in their Fifth Amendment "takings" claim. The Circuit Courts of Appeal have concluded that a "distinct" body of due process doctrine controls the government's taking of private property.  See Presley v. City Of Charlottesville, 464 F.3d 480, 489-90 (4th Cir. 2006) (holding that "in the takings context, the Due Process Clause only entitles property owners to

adequate notice prior to a judicial condemnation or just-compensation proceeding.").

> To be sure, Count III alleges violation of the Fifth Amendment Takings Clause, not violation of the Fourteenth Amendment Due Process Clause-the focus of the federal complaint. Nevertheless, we repeatedly have held that two actions are "parallel" where the underlying issues are the same, even if they have been "repackag[ed] ... under different causes of action." Clark, 376 F.3d at 687. In this case, [the plaintiff's] claims in the federal and state actions are inextricably interlinked: Government action effecting a taking is only valid if the plaintiff is compensated justly and is afforded due process of law....

Tyrer v. City of South Beloit, Ill., 456 F.3d 744, 753-54 (7th Cir. 2006).

To establish a violation of their right to procedural due process a plaintiff must establish the deprivation of a constitutionally protected liberty or property interest and a denial of adequate procedural protections supporting the deprivation. See Tutor-Saliba Corp., 452 F.3d at 1061; Foss v. National Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998); Brewster v. Board of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). When considering a procedural due process challenge to a government decision, the Court must first decide whether the challenged decision "was the type of government action to which due process applies." Harris v. County of Riverside, 904 F.2d 497, 501 (9th Cir. 1990). If the challenged decision warrants scrutiny, the Court must then decide whether the government's decision deprived the plaintiffs of a protected interest without adequate process. Id.

Property interests protectable by section 1983 are not created by the United States Constitution, but instead "by existing rules or understandings that stem from an independent source such as state law ...." _Board of Regents v. Roth_, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). _See also_ _Green v. Babbitt_, 64 F.3d 1266, 1272 (9th Cir. 1995). To have a property interest in a government benefit, such as a building permit or an exclusion from subdivision laws, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." _Board of Regents_, 408 U.S. at 577, 92 S. Ct. at 2709. The "mere fact a person has received a government benefit in the past, even for a considerable length of time, does not, without more, rise to the level of a legitimate claim of entitlement." _Doran v. Houle_, 721 F.2d 1182, 1186 (9th Cir. 1983).

Even assuming a landowner possesses an abstract "right" to build a dwelling on their real property, as stated _supra_, owners of real property do not necessarily have an unconditional right, protected by the takings or deprivation clauses of the Constitution, to build any particular project they choose or to receive an exemption from state statutes enacted for the public welfare. _See_ _Lakeview Dev. Corp._, 915 F.2d at 1294-95. Permitting requirements are not _per se_ constitutionally "illegitimate" if they disallow a previously permitted use of real property, because there is no federal constitutional right to be free from changes in state or local land use laws. _See_, _e.g._, _id._; _Haas v. City & County of San Francisco_, 605 F.2d

1117, 1120 (9th Cir. 1979); <u>Traweek v. City & County of San</u>

<u>Francisco</u>, 659 F. Supp. 1012, 1026 (N.D. Cal. 1984)

("[P]laintiffs bought into a heavily regulated situation and

were on notice that ... [t]heir purchase of property ... was

therefore necessarily 'subject to further legislation upon the

same topic.'").[20]   Accordingly, a section 1983 claim may not be

premised solely on the fact that a state "person" repealed a law

or revoked a once-valid permit.  <u>Lakeview Dev. Corp.</u>, 915 F.2d

at 1295.  <u>See also</u> <u>Thornton v. City of St. Helens</u>, 425 F.3d

1158, 1164 (9th Cir. 2005).

        Plaintiffs never had a "right" to build on or subdivide

their property in violation of state statutes, which was

_____

[20] Plaintiffs assert they acquired a "vested" right to develop
their property at the time they purchased their Greer Ranch parcels
from RTD.  Pursuant to Arizona law, to acquire a vested right to a
permit authorizing the commencement of a particular land use or
construction, the property owner must physically construct
improvements permitted by the use or incur substantial expenditures
toward construction or establishment of the use in reliance on or in
conformance with the permit.  <u>Fidelity Nat'l Title Ins. Co. v. Pima</u>
<u>County</u>, 831 P.2d 426, 429 (Ariz. Ct. App. 1992).  <u>See also</u> <u>Carpinteria</u>
<u>Valley Farms, Ltd. v. County of Santa Barbara</u>, 344 F.3d 822, 831 (9th
Cir. 2003); <u>Emmett McLoughlin Realty, Inc. v. Pima County</u>, 58 P.3d 39,
43 (Ariz. Ct. App. 2002).  However, the issue is not relevant to a
section 1983 claim with regard to whether Plaintiffs had a property
right protected by the United States Constitution:
        In contrast to a taking or deprivation claim, the gravamen
        of a "vested rights" claim is that the landowner has a
        right to a particular use of his land because he has relied
        to his detriment on a formal government promise (in the
        form of a permit) stating that he can develop that use. The
        claim is thus a species of governmental estoppel. [] A
        claim of estoppel against the government rests not on
        Constitutional norms of fairness but on broader norms of
        equity. []. Since no federal constitutional or statutory
        law requires the states to recognize any doctrine of
        governmental estoppel, let alone a doctrine with the
        particular contours that Lakeview urges us to recognize, we
        must reject Lakeview's suggestion that federal law governs
        the issue of vested rights.
<u>Lakeview Dev. Corp. v. City of S. Lake Tahoe</u>, 915 F.2d 1290, 1295 (9th
Cir. 1990) (interpreting California law) (internal citations omitted).

somehow rescinded by Defendants. Accordingly, because Plaintiffs do not, as a matter of law, have a constitutionally-protected property interest in the classification of their land pursuant to Arizona's subdivision laws, Plaintiffs' rights to procedural due process have not been violated. See Stone v. Godbehere, 894 F.2d 1131, 1134 (9th Cir. 1990) (concluding that the purpose of due process is to prevent erroneous deprivation of property rights, stating: "The deciding factor justifying the lack of traditional procedural protections in this case is that the risk of erroneous deprivation is minimal or nonexistent.").

The case presents three classes of Plaintiffs: Plaintiffs who purchased their property after the issuance of the Public Report and prior to the recording of the Summary Suspension Order, Plaintiffs who purchased property after the recording of the Summary Suspension Order and prior to the recording of the Final Order, and Plaintiffs who purchased property after the recording of the Final Order.

The Court concludes that, pursuant to Arizona law, the first class of Plaintiffs had constructive knowledge of the potential restrictions on their land by means of the Disclaimer in the Public Report, which put these Plaintiffs on notice that further investigation of the status of the property might be required, and which rendered any reliance on the Public Report unreasonable. The Disclaimer in the Public Report required Plaintiffs to inquire further before purchasing their property. See Luke v. Smith, 13 Ariz. 155, 162, 108 P. 494, 496 (1910) ("Where one has notice of a fact affecting property which he seeks to purchase, which puts him upon inquiry, he is chargeable

with knowledge which the inquiry, if made, would have revealed; and one is put upon inquiry by notice of a claim which is inconsistent with the title he seeks to obtain, and must exercise due diligence to ascertain the facts upon which the claim is based.").

        The Court further concludes that, pursuant to Arizona law, Plaintiffs who purchased their property after February 11, 2004, the date the Summary Suspension Order was recorded, had this additional constructive notice of the existence of restrictions on Greer Ranch property, in addition to the Disclaimer. See Hall v. World Sav. & Loan Ass'n, 189 Ariz. 495, 500-01, 943 P.2d 855, 860-61 (Ct. App. 1997).[21]  And with regard to the last class of Plaintiffs, the recording of the Final Order provided a further piece of constructive notice of the problems with Greer Ranch property to the five Plaintiffs who purchased property subsequent to August 4, 2004, the date the Final Order was recorded.  These Plaintiffs had constructive notice by means of the Disclaimer, and the recording of the Summary Suspension Order, and by the recording of the Final Order.  See Mountain States Tel. & Tel. Co. v. Kelton, 79 Ariz. 126, 133, 285 P.2d 168, 172 (1955) (holding recordation provides notice to those who are bound by law to search for it); Bailey

---

[21]

    Constructive notice includes both information available through recorded documents and knowledge of facts that impose a duty to inquire. []. Further, [n]otice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is ... equivalent to knowledge of all of the facts a reasonably diligent inquiry would disclose.[]

(internal citations and quotations omitted)

-34-

1  v. Kuida, 69 Ariz. 357, 362, 213 P.2d 895, 898 (1950); Carley v.
2  Lee, 58 Ariz. 268, 273, 119 P.2d 236, 239 (1941); HSL Linda
3  Gardens Props., Ltd. v. Freeman, 176 Ariz. 206, 207, 859 P.2d
4  1339, 1340 (Ct. App. 1993).  See also In re Bisbee, 157 Ariz.
5  31, 35, 754 P.2d 1135, 1139 (1988).

6        Furthermore, all of the Plaintiffs received actual
7  notice and an opportunity to be heard with regard to the Cease
8  and Desist order.  See Federoff v. Pioneer Title & Trust Co. of
9  Ariz., 166 Ariz. 383, 387-88, 803 P.2d 104, 108-09 (1990).

10               **Fifth Amendment "takings" claim**

11       The Fifth Amendment to the United States Constitution
12  provides, in pertinent part: "nor shall private property be
13  taken for public use, without just compensation."  U.S. Const.
14  amend. V, cl. 4.  This clause prohibits the government "from
15  forcing some people alone to bear public burdens which, in all
16  fairness and justice, should be borne by the public as a whole."
17  Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123,
18  98 S. Ct. 2646, 2659 (1978); Maritrans Inc. v. United States,
19  342 F.3d 1344, 1351 (Fed. Cir. 2003).  A takings claim may be
20  predicated on a regulation which restricts the landowner's use
21  of his property.

22       Regulatory takings claims are classified as categorical
23  and non-categorical claims.  See, e.g., Hotel & Motel Ass'n of
24  Oakland, 344 F.3d at 965.  A categorical taking occurs when "all
25  economically viable use, i.e., all economic value, has been
26  taken by the regulatory imposition."  Rith Energy, Inc. v.
27  United States, 247 F.3d 1355, 1362 (Fed. Cir. 2001) (citation
28  omitted).  Conversely, a non-categorical taking is one "that is

the consequence of a regulatory imposition that prohibits or restricts only some of the uses that would otherwise be available to the property owner, but leaves the owner with substantial viable economic use."   Id. (citation omitted).

Because Plaintiffs have not been deprived of all economic value with regard to their property, and because the challenged actions were taken in pursuit of legitimate state interests, Plaintiffs' claims are properly classified as a non-categorical taking.   See Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537, 125 S. Ct. 2074, 2081 (2005) (holding that compensation is due for a categorical taking only if the plaintiff can establish that the regulation eliminated all economically viable use of the property and that "background principles of nuisance and property law" did not independently restrict the plaintiff's intended use of the property), quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 2893 (1992); Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 n.3 (Fed. Cir. 2005).   See also Dolan v. City of Tigard, 512 U.S. 374, 385, 114 S. Ct. 2309, 2316 (1994); Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S. Ct. 2138, 2141 (1980).

Plaintiffs contend a taking has occurred because the value or usefulness of their property was diminished by a regulatory action, citing Hotel & Motel Association v. City of Oakland, 344 F.3d 959, 965 (9th Cir. 2003).[22]   To the extent that

---

[22]   In that case, the Ninth Circuit Court of Appeals concluded, inter alia, that a facial takings claim challenging city ordinances placing maintenance and habitability restrictions on commercial properties was not ripe.   The Ninth Circuit also held that the

Plaintiffs seek monetary damages for the alleged violation of their Fifth Amendment rights, the federal courts, including the United States Supreme Court, have concluded that a Fifth Amendment takings claim seeking monetary damages is not "ripe" until the plaintiffs have exhausted available state remedies with regard to claiming compensation for any loss of property value.  See, e.g., Washington Legal Found. v. Legal Found. of Wash., 271 F.3d 835, 871 (9th Cir. 2001); Dodd v. Hood River County, 59 F.3d 852, 859 (9th Cir. 1995) (holding the federal courts lack jurisdiction to consider an as-applied regulatory taking claim until a determination is reached that "just compensation" has been denied by the state).

The United States Supreme Court held in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, that a federal takings claim is not ripe for adjudication if the plaintiff landowner had "not yet obtained a final decision" from the relevant state regulatory agency regarding any devaluation or loss of the use of their property.  473 U.S. 172, 186-87, 105 S. Ct. 3108, 3116-17 (1985).  The Williamson court held the plaintiff's takings claim was not ripe because the plaintiff had not used "the available state procedure for obtaining just compensation."  Id., 473 U.S. at 186, 105 S. Ct. at 3116.  See also River City Capital, L.P. v. Board of County Comm'rs, Clermont County, Oh., 491 F.3d 301, 306-07 (6th Cir.

---

challenged city ordinance substantially advanced a legitimate state interest, and thus was not a takings and that the city was not required to provide the property owners' association with individualized notice or a hearing prior to enactment of the ordinances.

2007); <u>McNamara v. City of Rittman</u>, 473 F.3d 633, 638 (6th Cir. 2007); <u>Macri</u>, 126 F.3d at 1129 ("It is axiomatic that a takings violation is not complete until the plaintiff has sought compensation through state remedies and been denied...").

Arizona does have an inverse condemnation procedure, which Plaintiffs do not allege is unavailable or inadequate, nor do Plaintiffs contend the procedure would be futile, as evidenced by the fact that these cases originated in state court as inverse condemnation actions. <u>See</u> <u>Washington Legal Foundation</u>, 271 F.3d at 872. <u>See</u> <u>also</u> Ariz. Const. art. 2, § 17; <u>Wonders v. Pima County</u>, 207 Ariz. 576, 580, 89 P.3d 810, 814 (2004). Accordingly, to the extent Plaintiffs seek monetary damages based on a regulatory non-categorical takings claim, Plaintiffs' claims are not ripe and must be dismissed without prejudice.

To the extent that Plaintiffs seek declaratory judgment for the alleged violation of their Fifth Amendment rights the claim, arguably, is ripe for adjudication. <u>See</u> <u>Suitum v. Tahoe Reg'l Planning Agency</u>, 520 U.S. 725, 736 n.10, 117 S. Ct. 1659, 1666 n.10 (1997); <u>Yee v. City of Escondido</u>, 503 U.S. 519, 533-34, 112 S. Ct. 1522, 1531-32 (1992) (concluding that, although <u>Williamson</u> precludes unripe claims for just compensation, it does not exclude from federal court a claim for declaratory and injunctive relief to establish that a state law, on its face, violates the Fifth Amendment). However, Plaintiffs are not entitled to injunctive relief based on an as-applied non-categorical regulatory takings claim; the only remedy available to plaintiffs in such a section 1983 suit is "just

compensation," i.e., damages.  See Madison, 316 F.3d at 871.
Because Plaintiffs have not named a "person" subject to a
section 1983 monetary damages judgment as a defendant in this
matter, Plaintiffs' takings claim as against the Defendants
named in their complaint(s) must be dismissed.

Furthermore, Defendants are entitled to judgment as a
matter of law with regard to Plaintiffs' takings claim.  See
Lucas, 505 U.S. at 1022-24, 112 S. Ct. at 2896-97 ("[T]he
Takings Clause does not require compensation when an owner is
barred from putting land to a use that is proscribed by [ ]
existing rules or understandings.").  Determining whether an
actionable non-categorical taking has occurred involves the
fact-based inquiry stated in Penn Central, i.e., an inquiry into
(1) the character of the governmental action; (2) the economic
impact of the action on the plaintiff; and (3) the effects of
the governmental action on the reasonable investment-backed
expectations of the plaintiff.  See, e.g., Lingle, 544 U.S. at
537, 125 S. Ct. at 2081; Penn Cent. Transp. Co., 438 U.S. at
124, 98 S. Ct. at 2659; American Pelagic Fishing Co., LP v.
United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004); Maritrans,
342 F.3d at 1351.

As stated supra, the character of the challenged
government action was enforcing compliance with Arizona's public
land laws providing for the safety and welfare of citizens.
Although the economic impact of the action on Plaintiffs is
presumably substantial, it is temporary as Plaintiffs can bring
their property into compliance with the subdivision laws, likely
resulting in a tremendous increase in the value of their

-39-

property. Additionally, although the Plaintiffs had investment-backed expectations with regard to their property, any expectation of being allowed to proceed with the sale or development of their property in derogation of subdivision laws would not be reasonable.

Plaintiffs cannot prove Defendant Richardson or the ADRE denied a plat application, property sale, or building permit, without advancing a legitimate state interest or under circumstances denying Plaintiffs of any economically viable use of their property. See, e.g., Macri, 126 F.3d at 1129. A government decision diminishing the value of private property does not constitute a taking requiring compensation if, despite the regulation, a reasonable use of the regulated property still exists. See Silveira v. Lockyer, 312 F.3d 1052, 1092 (9th Cir. 2002). Additionally, the right to build on, sell, or develop their property absent compliance with Arizona's laws was never a "stick" in the "bundle" of property rights possessed by Plaintiffs and, accordingly, they were not deprived of any legitimate "right" by the Defendants. See Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir. 2002) ("First, a court determines whether the plaintiff possesses a valid interest in the property affected by the governmental action, i.e., whether the plaintiff possessed a 'stick in the bundle of property rights.'" (internal citation omitted)); M & J Coal Co. v. United States, 30 Fed. Cl. 360, 367 (Fed. Cl. 1994) ("Interests that are not sufficiently bound up with the reasonable expectations of the claimant are not 'sticks' in the claimant's 'bundle of rights' and thus do not constitute

property for Fifth Amendment purposes."). "A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired." <u>United States v. Riverside Bayview Homes, Inc.</u>, 474 U.S. 121, 127, 106 S. Ct. 455, 459 (1985). Only when a permit is denied and the effect of the denial is to prevent "economically viable" use of the land in question can it be said that a taking has occurred. <u>Id.</u>

Accordingly, even taking the facts in the light most favorable to Plaintiffs and assuming that the claims are ripe, Defendants are entitled to judgment as a matter of law with regard to Plaintiffs' claims that their property was taken without just compensation in violation of the Fifth Amendment.

### Claims for declaratory relief

Pursuant to the Declaratory Judgment Act, codified at 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." When determining the propriety of judgment pursuant to section 2201, the Court must first determine whether there is an actual case or controversy within its jurisdiction, using the same analysis as that used to analyze the "case or controversy" requirement of Article III. <u>See</u>, <u>e.g.</u>, <u>American States Ins. Co. v. Kearns,</u>, 15 F.3d 142, 143 (9th Cir. 1994). The Court lacks subject matter jurisdiction over the matter if the claims are not ripe, i.e., if there is no

case or controversy.  Id.

Assuming the first prong of the test is satisfied, however, the Court's jurisdiction to entertain a declaratory action is discretionary.  See id.  When deciding whether to exercise this jurisdiction, the Court may consider, *inter alia*, whether it should "avoid needless determination of state law issues," and whether "it should discourage litigants from filing declaratory actions as a means of forum shopping."  Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 672 (9th Cir. 2004), citing Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S. Ct. 1173 (1942).

The Court should "avoid needless determination of constitutional questions which may lead to a needless obstruction of the domestic policy of the states..."  Alabama State Fed'n of Labor v. McAdory, 325 U.S. 450, 471, 65 S. Ct. 1384, 1394 (1945).  The Court should also consider whether a declaratory judgment will settle all aspects of the controversy, and the relative convenience of other remedies.  See Principal Life Ins. Co., 394 F.3d at 672.  The Supreme Court has instructed the lower courts to balance concerns of judicial administration, comity, and fairness, when determining whether to exercise their discretion with regard to declaratory judgments.  See American States Ins. Co., 15 F.3d at 144; Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1367 (9th Cir. 1991).

Having concluded that Defendants are entitled to judgment as a matter of law with regard to Plaintiffs' section 1983 claims, the Court concludes Defendants are also entitled to

judgment as a matter of law with regard to Plaintiffs' claims pursuant to 28 U.S.C. § 2201.

**State law based claims**

Plaintiffs have also asserted a state law based claim for negligence and a claim for inverse condemnation against Defendants.

Ordinarily, if "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 604, 619 n.7 (1988).   The Court must consider "judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims...."  United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966).

The Court concludes that, because Plaintiffs initiated these claims in the state court and no federal constitutional claims remain for the Court's consideration, Plaintiffs' state-law based claims of action should not be decided by the Court but instead should be remanded.

**V Conclusion**

Plaintiffs purchased their property from RTD at their own risk, and were presumably aware of the disclaimer contained in the Public Report.   Plaintiffs knew or should have known that, at the time RTD sold the parcels, Greer Ranch was an illegal subdivision pursuant to the state's statutes.  The Court

-43-

agrees with Defendants that Plaintiffs' claims are properly asserted against RTD and properly brought in the state court. Defendants note Plaintiffs have a right of recision and a right to damages pursuant to Arizona Revised Statutes §§ 32-2183.03[23] and 32.2195.06.

Accordingly,

**IT IS ORDERED that** Plaintiffs' motion for partial summary judgment [Docket No. 32] is **denied**, and that Plaintiffs' motion to strike [Docket No. 53] is **denied**.

**IT IS FURTHER ORDERED that** Defendants' motion for summary judgment [Docket No. 47] is **granted** with regard to all

---

[23]
B. Any subdivider or agent who sells or leases a lot or parcel in a subdivision in violation of § 32-2183 or by means of a public report which contains an untrue statement of a material fact or omits a material fact required to be stated in such report shall be liable to the purchaser of such lot or parcel as provided in this section unless at the time of purchase the purchaser knew of the untrue or omission.
***
D. Damages in any suit brought pursuant to this section shall be the difference between the purchase price of the lot or parcel plus the cost of any improvements made to such lot or parcel and the following applicable amount:
1. The price at which such lot or parcel was sold in a bona fide market transaction prior to suit or judgment.
2. If the lot or parcel has not been sold before judgment, the current market value of the lot or parcel and any improvements as of the date the suit was filed.
E. In any action in which a violation of this section is established the purchaser shall also be entitled to recover reasonable attorney fees as determined by the court. ....
***
H. Nothing contained in this section shall be construed to preclude any other remedies that may exist at law or in equity.
Ariz. Rev. Stat. Ann. § 32-2183.03 (2002 & Supp. 2006). The result is not otherwise because some Plaintiffs may have allowed the two or three-year statute of limitations on such an action to lapse. See id. § 32-2183.03(H) (allowing for two years to bring an action when the plaintiff discovers the malfeasance or for three years from the date of the purchase of the land).

of Plaintiffs' section 1983 claims and with regard to Plaintiffs' claim for declaratory relief pursuant to 28 U.S.C. § 2201, and that Defendants' supplemental motion for summary judgment [Docket No. 52] is **granted**.

**IT IS FURTHER ORDERED that** Plaintiffs' state-law based claims for negligence and inverse condemnation are remanded to the Arizona Superior Court.

The Clerk of the Court shall enter separate judgment accordingly.

DATED this 11th day of December, 2007.

_____
Mark E. Aspey
United States Magistrate Judge